Shawnee S. Perdue
**JOHNSON & MONTELEONE, L.L.P.**
350 North Ninth Street, Suite 500
Boise, Idaho 83702
Telephone:  (208) 331-2100
Facsimile:  (208) 947-2424
shawnee@treasurevalleylawyers.com
Idaho State Bar No. 8888

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| CARLEEN A. SCHNITKER,<br><br>            Plaintiff,<br>v.<br><br>NAMPA SCHOOL DISTRICT, a political subdivision, and JOHN/JANE DOES I-V, whose true identities are unknown,<br><br>            Defendants. | **Case No.**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff Carleen A. Schnitker, by and through her attorney of record, Shawnee Perdue of the law firm of Johnson & Monteleone, L.L.P., and for causes of action against the above-named Defendants, hereby complains and alleges as follows:

### PARTIES

1.      At all relevant times herein mentioned, Plaintiff Carleen A. Schnitker ("Ms. Schnitker"), has been and currently is, a resident of Ada County, Idaho.

2.      At all relevant times herein mentioned, Defendant Nampa School District ("NSD"), was, and now is, a public, governmental school district or political subdivision of the state of Idaho with its administrative offices located in Nampa, Canyon County, Idaho, and with its operations primarily conducted in Canyon County, Idaho.

3. Defendant John/Jane Does I through V, whose true identities are presently unknown, are entities or individuals acting on behalf of, or in concert with NSD herein. Defendant NSD and Defendant John/Jane Does I through V are collectively referred to herein as "Defendants".

4. Based upon the above allegations, venue is proper in this action.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331(3) and (4) for violations of federal law, and § 1343 to hear actions to vindicate violations of the federally protected civil rights of Ms. Schnitker under the color of state law. Additionally, this Court shares concurrent jurisdiction with the courts of the state of Idaho in matters arising under the Idaho Human Rights Act, Idaho Code § 67-5901 *et seq*. This Court's jurisdiction over Ms. Schnitker's state law claims is founded upon 28 U.S.C. § 1367.

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), because all Defendants are either residents or corporate or governing bodies of the state of Idaho and all acts complained of occurred in Canyon County, Idaho.

## GENERAL ALLEGATIONS

7. Ms. Schnitker has been employed by the Nampa School District since approximately 1997. Prior to her termination, Ms. Schnitker was the principal of Union High School ("UHS"), located in Canyon County, Idaho.

8. Ms. Schnitker has been diagnosed ADHD, her diagnosis was well known among her peers and the administration. Paula Kellerer, the NSD Superintendent ("Ms. Kellerer"), was informed in March of 2018 of Ms. Schnitker's diagnosis. Gregg Russell, the Assistant Superintendent of Teaching and Learning at NSD ("Mr. Russell"), was informed of her diagnosis

during the 2018-2019 school year. Scott Parker, the former Director of Secondary Education at NSD, and Ms. Schnitker's direct supervisor (Mr. Parker") has been aware of her diagnosis since the fall of 2016.

9. On October 21, 2018, Ms. Schnitker's house burned down. Shortly after the fire, Ms. Schnitker informed Mr. Parker that her ADHD is exacerbated during traumatic events. Ms. Schnitker repeatedly requested to have meetings to discuss possible accommodations for her disability after her house fire. Her requests were repeatedly ignored.

10. As principal of UHS, Ms. Schnitker endured significant harassment and discrimination based on her gender up to, and including, her termination. Ms. Schnitker reported her concerns several times to NSD Administrators including Ms. Kellerer, Mr. Russell, and Mr. Parker. Ms. Schnitker's concerns were ignored.

11. The discrimination Ms. Schnitker endured included, but is not limited to, the following:

   a) Randy Dewey, NSD's Chief Financial Officer ("Mr. Dewey"), demeaned and insulted Ms. Schnitker regularly in meetings. Mr. Dewey engaged in this conduct in front of coworkers and district administrators. Mr. Parker directly witnessed Mr. Dewey's demeaning conduct toward Ms. Schnitker and failed to take any action to protect Ms. Schnitker. Ms. Schnitker reported his conduct to both Ms. Kellerer and Mr. Parker. Mr. Dewey has publicly insulted Ms. Schnitker's intelligence and called her "blonde" as a reason for why she has questions regarding his work. Mr. Dewey has never been reprimanded or corrected for his well-known discriminatory conduct toward Ms. Schnitker. In October 2018, Ms. Schnitker told Mr. Parker she was going to make a formal grievance against Mr. Dewey to Mr. Russell. Mr. Parker told Ms. Schnitker not to make a grievance and to "let him handle it" because Mr. Russell is "not the type of guy" who would respond appropriately to a complaint of gender discrimination. After Ms. Schnitker's report to Mr. Parker, Mr. Dewey cancelled all face-to-face communication with Ms. Schnitker. Mr. Dewey excluded her from important financial documents and meetings. Mr. Parker and Mr. Dewey also began excluding Ms. Schnitker from important budget and finance meetings that directly involved or impacted UHS.

   b) Ms. Schnitker was told by her male principal colleagues numerous times that she is intentionally excluded from social gatherings with those male principal

**COMPLAINT AND DEMAND FOR JURY TRIAL - 3**

    colleagues because their wives would be jealous of her. In 2019, Ms. Schnitker reported this to Mr. Russell and Mr. Parker. Ms. Schnitker was then counseled by Mr. Russell and Mr. Parker for not "strengthening" relationships with those same male principal colleagues who were intentionally excluding her.

  c) Since 2016, Mr. Parker was uncomfortably flirtatious with Ms. Schnitker and interested in her dating life. Mr. Parker's flirting was open and obvious to Ms. Schnitker's colleagues and friends.

  d) Mr. Parker has also commented to Ms. Schnitker that another female principal in the district has "resting bitch face" and "needs to get laid."

  e) While traveling for educational conferences, Mr. Parker publicly swapped stories with male colleagues about sexual interactions in the presence of Ms. Schnitker.

12. On March 8, 2019, Mr. Parker made sexual advances toward Ms. Schnitker and Ms. Schnitker denied his advances.

13. After Ms. Schnitker reported sexual harassment and gender discrimination and requested disability accommodation, she suffered adverse employment actions against her by Defendants as outlined in the following paragraphs.

14. On March 13, 2019, five days after Ms. Schnitker denied Mr. Parker's advances, Ms. Schnitker was called into an impromptu meeting with Mr. Parker and Mr. Russell and was reprimanded for her performance. Mr. Parker and Mr. Russell cited unsubstantiated "perceptions" and failed to provide any documented or measurable performance issues. Ms. Schnitker challenged the accuracy of the alleged performance issues and offered to present evidence to the contrary. Mr. Russell informed Ms. Schnitker that he "did not care" about the accuracy and that his "perception" was the only thing that mattered. Mr. Parker and Mr. Russell repeatedly refused to allow Ms. Schnitker to defend herself and repeatedly interrupted her during this meeting.

15. In the March 13, 2019 meeting Mr. Russell threatened Ms. Schnitker, stating that her employment contract may not be continued. Mr. Russell also refused to allow any

accommodation for Ms. Schnitker's disability and told her to take "FMLA if she was too sick to work." Ms. Schnitker asked for clarification regarding the alleged performance issues, stating that she has worked for NSD for over 20 years with proficient and distinguished evaluations, yet the year her house burns down and she asks for accommodations, is the year Defendants take adverse employment action against her. Again, Mr. Russell stated his "perception" was the only thing that mattered.

16. Six days later, on March 19, 2019, Ms. Schnitker was abruptly called into another impromptu meeting with Mr. Russell and Mr. Parker. At this meeting, Ms. Schnitker was given a list of employment expectations; those expectations were introduced to her as being negotiable, but, when Ms. Schnitker stated that the expectations were in violation of employment laws, she was scolded, and was told that the expectations were not negotiable and she just needed to "do them." Instead of engaging in an interactive process or making any attempts to accommodate Ms. Schnitker, Mr. Parker and Mr. Russell chose to discipline Ms. Schnitker for her disability. Further, they required her to be at UHS from 7:30 a.m.- 4:00 p.m., making no accommodations for her doctor's appointments. Mr. Russell accused Ms. Schnitker of not being invested in her school and said that "maybe she wasn't the person to lead a school" if she needed accommodations. Mr. Russell also said that he felt she was using her house burning down "as an excuse."

17. On April 25, 2019, Mr. Parker had the UHS secretary schedule a meeting between Ms. Schnitker, Mr. Russell, and Mr. Parker titled "FTE/Budget". Ms. Schnitker voiced her concern that all the staff needed to be present as there have been several issues with Mr. Russell and Mr. Parker dispensing incorrect information amongst the staff. Mr. Russell then declined the meeting. The meeting proceeded on April 26, 2019, between Mr. Parker and the UHS staff.

During that meeting, Mr. Parker was adamant that UHS was failing the metrics as set forth in an Innovation Agreement. Ms. Schnitker and her staff corrected Mr. Parker regarding the school's metrics. Mr. Parker became very aggravated and warned the team that changes were going to have to happen because Mr. Russell and Ms. Kellerer were not happy.

18. While Ms. Schnitker was out of town in or around early May 2019, Mr. Parker and Mr. Russell provided the UHS staff inaccurate information regarding UHS's metrics. In response, On May 7, 2019, Ms. Schnitker sent an email to all UHS staff correcting the errors and inaccurate information provided by Mr. Parker and Mr. Russell regarding UHS's metrics.

19. On May 8, 2019, Ms. Schnitker sent Gwen Hamlin in Human Resources, her notice of grievance regarding the discrimination and retaliation Ms. Schnitker has endured.

20. The same day, Ms. Schnitker was called into an impromptu meeting with Mr. Parker and Mr. Russell and advised that she was being placed on administrative leave for allegedly forging a document, an allegation which NSD had no proof to support. Ms. Schnitker's May 7, 2019 email to the UHS staff was directly cited as a reason for her reprimand, although Mr. Parker and Mr. Russell conceded the information Ms. Schnitker sent out was correct and that she did a "good job."

21. Despite Ms. Schnitker denying the allegations of forging a document and requesting an opportunity to provide evidence that the allegations were false, she was immediately placed on administrative leave, locked out of her emails, and prohibited from being on the UHS campus. Other NSD employees, particularly male employees, who have been placed on administrative leave have continued to have access to their emails.

22. On June 4, 2019, another employee of UHS reported sexual harassment/assault by Mr. Parker. After the June 4, 2019, complaint, Defendants terminated or forced the resignation of Mr. Parker.

23. On June 5, 2019, Defendants issued a Notice of Proposed Nonrenewal of Contract for Ms. Schnitker's principal position. Defendants relied upon Mr. Parker's representations and investigation in taking adverse employment action against Ms. Schnitker, despite Ms. Schnitker being a victim of his sexual harassment and discrimination.

24. On June 13, 2019, Ms. Schnitker, through her attorney, outlined the discriminatory and retaliatory conduct she endured in a letter disputing Defendants' claims against her.

25. On June 24, 2019, Defendants issued a formal Notice of Nonrenewal of Contract—Intent to Discontinue Employment to Ms. Schnitker.

26. As a result of Defendants' actions and inactions, Ms. Schnitker suffered severe emotional distress including depression, anxiety, loss of appetite, and inability to sleep.

## COUNT ONE
## GENDER DISCRIMINATION/ SEXUAL HARASSMENT
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000(e) *ET SEQ*., AS AMENDED

27. Ms. Schnitker incorporates herein by reference all the foregoing and following allegations of the Complaint.

28. Under the provisions of Title VII of the Civil Rights Act of 1964, Ms. Schnitker is a covered employee, and NSD, an employer with over fifteen employees, is a covered entity.

29. Defendants, through the acts of the above-mentioned individuals, throughout Ms. Schnitker's employment, created an abusive and hostile work environment in which Ms. Schnitker was harassed and discriminated against because of her gender.

30. The wrongful treatment concerning Ms. Schnitker's terms and conditions of employment by Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, and constituted gender discrimination and harassment.

31. Defendants committed the acts alleged, or failed to act as reasonably required, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Ms. Schnitker from an improper and evil motive amounting to malice, and in conscious disregard of Ms. Schnitker's rights. Ms. Schnitker may thus recover punitive damages from Defendants in an amount to be proven at trial.

32. Ms. Schnitker is entitled to recover damages, including back and front pay and lost benefits, compensatory and punitive damages, and attorney fees because of Defendants' discriminatory conduct.

33. Ms. Schnitker is entitled to recover her attorney fees and costs incurred in pursuing this matter pursuant to any and all applicable provisions of federal or Idaho law.

## COUNT TWO
## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. § 2000(e) *ET SEQ.*, AS AMENDED

34. Ms. Schnitker incorporates herein by reference all the foregoing and following allegations of the Complaint.

35. Ms. Schnitker engaged in protected activity by reporting discriminatory conduct against her to her supervisors, Mr. Russell, and Ms. Kellerer, and Mr. Parker by filing a formal grievance on May 8, 2019.

36. Defendants wrongfully retaliated against Ms. Schnitker for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964.

37. Defendants wrongfully retaliated against Ms. Schnitker by taking adverse employment action against her, including placing Ms. Schnitker on administrative leave, and ultimately terminating Ms. Schnitker.

38. Defendants committed the acts alleged, or failed to act as reasonably required, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Ms. Schnitker from an improper and evil motive amounting to malice, and in conscious disregard of her rights. Ms. Schnitker may thus recover punitive damages from Defendants in amounts to be proven at trial.

39. Ms. Schnitker is entitled to recover her attorney fees and costs incurred in pursuing this matter pursuant to any and all applicable provisions of federal or Idaho law.

## COUNT THREE
## GENDER DISCRIMINATION IN VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681(a)

40. Ms. Schnitker incorporates herein by reference all the foregoing and following allegations of the Complaint.

41. NSD receives federal funding and is subject to Title IX of the Education of Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX").

42. Title IX protects employees and students of an education institution, including NSD, from gender discrimination and harassment.

43. Defendants' actions and omissions constitute unlawful discrimination against Ms. Schnitker in violation of her rights under Title IX.

44. Defendants, through the acts of the above-mentioned individuals throughout Ms. Schnitker's employment, created an abusive and hostile work environment in which Ms. Schnitker was harassed and discriminated against because of her gender.

45. Defendants committed the acts alleged, or failed to act as reasonably required, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Ms. Schnitker from an improper and evil motive amounting to malice, and in conscious disregard of Ms. Schnitker's rights. Ms. Schnitker may thus recover punitive damages from Defendants in amount to be proven at trial.

46. Ms. Schnitker is entitled to recover damages, including back and front pay and lost benefits, compensatory and punitive damages, and attorney fees because of Defendants' discriminatory conduct.

47. Ms. Schnitker is entitled to recover her attorney fees and costs incurred in pursuing this matter pursuant to any and all applicable provisions of federal or Idaho law.

## COUNT FOUR
## RETALIATION IN VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681(a)

48. Ms. Schnitker incorporates herein by reference all the foregoing and following allegations of the Complaint.

49. NSD receives federal funding and is subject to Title IX of the Education of Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX").

50. Title IX prohibits retaliation against students and employees who engage in protected activity.

51. Ms. Schnitker engaged in protected activity by reporting her sexual harassment and discrimination to her supervisors and by filing a grievance regarding her gender discrimination.

52. Defendants wrongfully retaliated against Ms. Schnitker for engaging in protected activity in violation of Title IX. Defendants created a hostile working environment by taking such discriminatory and retaliatory actions against Ms. Schnitker as referenced above.

53. Defendants wrongfully retaliated against Ms. Schnitker by taking adverse employment action against her, up to and including, placing Ms. Schnitker on administrative leave, and terminating Ms. Schnitker.

54. Defendants committed the acts alleged, or failed to act as reasonably required, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Ms. Schnitker from an improper and evil motive amounting to malice, and in conscious disregard of Ms. Schnitker's rights. Ms. Schnitker may thus recover punitive damages from Defendants in amounts to be proven at trial.

55. Ms. Schnitker is entitled to recover her attorney fees and costs incurred in pursuing this matter pursuant to any and all applicable provisions of federal or Idaho law.

## COUNT FIVE
## AMERICANS WITH DISABILITY ACT - DISABILITY DISCRIMINATION
## 42 U.S.C. § 12112(a),(b),(d)

56. Ms. Schnitker incorporates herein by reference all the foregoing and following allegations of the Complaint.

57. Ms. Schnitker is a qualified individual with a disability within the meaning of the Americans with Disabilities Act ("ADA").

58. Defendants were aware of Ms. Schnitker's disability at all relevant times alleged in this Complaint.

59. Defendants, through its employees, discriminated against Ms. Schnitker on the basis of her disability by refusing to make a reasonable accommodation and by disciplining Ms. Schnitker because of her disability.

60. Defendants intentionally and with deliberate indifference failed to engage with Ms. Schnitker in an interactive process to determine whether her disability could be reasonably accommodated.

61. Defendants intentionally and with deliberate indifference retaliated against Ms. Schnitker for seeking reasonable accommodations in violation of the ADA.

62. The actions of Defendants in intentionally and with deliberate indifference failing to engage with Ms. Schnitker in an interactive process to determine whether her disability could be reasonably accommodated, and retaliating against Ms. Schnitker, is in violation of the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, and the ADA, which prohibits discrimination based on disability.

63. As a result of Defendants violation of the Idaho Human Rights Act, Idaho Code § 67-5901, *et seq.*, and the ADA, Ms. Schnitker is entitled to compensatory damages including, but not limited to, damages for pain, suffering, emotional distress, lost wages, and lost benefits in an amount to be determined with specificity at trial.

64. Ms. Schnitker is entitled to recover her attorney fees and costs incurred in pursuing this matter pursuant to any and all applicable provisions of federal or Idaho law.

### COUNT SIX
### AMERICANS WITH DISABILITY ACT - RETALIATION 42 U.S.C. § 12203

65. Ms. Schnitker hereby incorporates and re-alleges all previous paragraphs of this Complaint.

66. Ms. Schnitker is a qualified individual with a disability within the meaning of the ADA.

67. Defendants were aware of Ms. Schnitker's disability at all relevant times alleged in this Complaint.

68. Ms. Schnitker repeatedly requested reasonable accommodations from her supervisors, and Defendants failed to make any formal disability accommodations.

69. Defendants, through their employees, retaliated against Ms. Schnitker on the basis of her disability in the following ways:

   a) reprimanding Ms. Schnitker for requesting accommodations as a result of her disability;

   b) telling Ms. Schnitker to take FMLA if she was "too sick to work";

   c) threatening Ms. Schnitker with non-renewal of her contract after she requested accommodation;

   d) disciplining and terminating Ms. Schnitker for requesting a reasonable accommodation; and

   e) refusing to provide breaks pursuant to medically necessary and reasonable accommodation requests.

70. As a direct and proximate result of Defendants' retaliation against Ms. Schnitker, she suffered damages to be proven with specificity at trial.

71. Ms. Schnitker is entitled to recover her attorney fees and costs incurred in pursuing this matter pursuant to any and all applicable provisions of federal or Idaho law.

## CLAIM FOR ATTORNEY FEES

72. Ms. Schnitker has been required to retain the services of Johnson & Monteleone, L.L.P. to prosecute this action and is thus entitled to recover reasonable attorney fees in accordance with Federal Code and/or other provisions of law.

## PRAYER FOR RELIEF

**WHEREFORE,** Ms. Schnitker prays for judgment against Defendants as follows:

1. For her special and general damages in amounts which may be proven at trial;

2. For costs of suit incurred herein;

3. For reasonable attorney fees to be determined by the Court; and

4. For such other relief as the Court deems just and proper.


DATED:  August 20, 2020

JOHNSON & MONTELEONE, L.L.P.

_____
Shawnee S. Perdue
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Pursuant to I.R.C.P. 38(b), Plaintiff hereby demands a trial by jury on any and all issues properly triable by jury in this action.

DATED:  August 20, 2020

JOHNSON & MONTELEONE, L.L.P.

_____
Shawnee S. Perdue
Attorneys for Plaintiff